IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| PHILLIP GRANT HART, JR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KILOLO KIJAKAZI,[1] )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 21-05024-CV-SW-WBG |

**ORDER AND OPINION AFFIRMING THE ACTING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff Phillip Hart Jr.'s appeal of Defendant Acting Commissioner of Social Security's final decision denying his application for disability insurance benefits. After carefully reviewing the record and the parties' arguments, the Acting Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in 1970 and has a high school education.[2] R. at 22, 97, 101, 120, 197. He previously worked as a structural steel worker. R. at 21, 99-100. In August 2018, Plaintiff protectively applied for disability insurance benefits alleging a disability onset date of June 25, 2017. R. at 11, 197-98. His application was denied in November 2018. R. at 159-62. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). R. at 163-64.

On November 6, 2019, ALJ James Gillet held a hearing via video teleconference. R. at 118-44. Prior to issuing his decision, ALJ Gillet became unavailable, and the Chief ALJ reassigned the matter to ALJ Walter Hellums. *See* R. at 11. In September 2020, ALJ Hellums held a

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is automatically substituted for former Commissioner of the Social Security Administration Andrew Saul as Defendant in this suit.

[2] Plaintiff graduated from high school and subsequently attended one year of college. R. at 101.

supplemental telephone hearing during which Plaintiff and a vocational expert testified. R. at 95-117. Thereafter, on September 22, 2020, the ALJ issued a decision finding Plaintiff is not disabled. R. at 11-23. He concluded Plaintiff's severe impairment is chronic fatigue syndrome ("CFS"). R. at 13. Additionally, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [H]e is able to occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance and stoop; and frequently kneel, crouch, and crawl. He must avoid more than occasional work-related exposure to hazards, such as unprotected heights and unguarded moving machinery. He is able to understand, remember, and carry out simple and some detailed instructions that can be learned within 3 months.

R. at 15.

Based on his review of the record, his RFC determination, and the testimony at the hearing, the ALJ concluded Plaintiff could work as a marker, classifier, or an injection molding machine tender. R. at 22-23. The ALJ found Plaintiff was not disabled. R. at 23. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 1-3, 194-96. He now appeals to this Court. Doc. 1.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). The Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

"As long as substantial evidence supports the ALJ's decision, [a reviewing court] may not reverse because substantial evidence also 'would have supported a contrary outcome, or because [the court] would have decided the case differently.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)). In evaluating for substantial evidence, a court must consider evidence that supports the Commissioner's decision as well as evidence that detracts from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, [the court] must affirm. *See id* (citation omitted). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternative outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### III. DISCUSSION

Plaintiff contends this matter must be reversed because the ALJ failed to (A) assess the RFC on a function-by-function basis as required by Social Security Ruling ("SSR") 96-8p, and (B) properly evaluate the medical record – including the medical opinion evidence. *See* Doc. 13.

**A.  RFC Assessment Pursuant to SSR 96-8p**

**(1)  Standard**

One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). Pursuant to the Social Security Administration's policy interpretation, "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," and "[o]nly after that may RFC be expressed" by the exertional level of work. Soc. Sec. Admin., Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL

374184, at *1 (July 1, 1996); *see also* 20 C.F.R. § 404.1545(b). Failure to make an explicit finding regarding a functional ability is not, by itself, a legal error requiring remand. *See Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003). Instead, the Eighth Circuit has held an ALJ's failure to articulate consideration of a functional ability in a claimant's RFC may imply the ALJ found no limitation in that area. *Id*. (concluding the ALJ implicitly found the claimant was not limited in the functions that were not included the RFC).

**(2)     The ALJ's Assessment of Plaintiff's RFC**

Plaintiff contends the ALJ first erred by failing to determine his RFC on a function-by-function basis, rendering the RFC flawed as a matter of law. Doc. 13 at 12. Specifically, he argues the ALJ violated SSR 96-8p because he did not explain in detail how he assessed Plaintiff's ability to "sit, walk, stand, push and pull." *Id*. Defendant contends "Plaintiff's arguments are unfounded" and lack merit. Doc. 18 at 15.

Here, Plaintiff's RFC is clear from the ALJ's decision. The ALJ found Plaintiff is able to perform light work[3] except he "is able to occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance and stoop; and frequently kneel, crouch, and crawl." R. at 15. Further, "[h]e must avoid more than occasional work-related exposure to hazards, such as unprotected heights and unguarded moving machinery. He is able to understand, remember, and carry out simple and some detailed instructions that can be learned within 3 months." *Id*.

Plaintiff's argument that the ALJ erred as a matter of law is unpersuasive. The Eighth Circuit has held an ALJ complies with SSR 96-8p even if they do not make an explicit finding with respect to each functional limitation. *See Depover*, 349 F.3d at 567-68. Despite Plaintiff's

---

[3] Although not specifically defined in ALJ's decision, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). The ALJ, however, cited to section 404.1567(b) in the RFC and its discussion of light work. R. at 15.

4

Case 3:21-cv-05024-WBG     Document 25     Filed 09/13/22     Page 4 of 16

claims to the contrary, remand is only required where the ALJ describes the RFC in such general terms that the Court is unable to determine whether the claimant's RFC is limited in some way. *Id*.

As recently explained by the Eighth Circuit, courts review the record "to ensure that an ALJ does not disregard evidence or ignore potential limitations," but an ALJ is not required "to mechanically list and reject every possible limitation." *Nash v. Comm'r of the Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (quoting *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011)). *Nash* rejected a similar argument that the ALJ violated SSR 96-8p for failing to assess the RFC on a function-by-function basis. *Id.*; *see also Menter v. Kijakazi*, No. 6:20-CV-003198-DGK-SSA, 2022 WL 188146, at *2 (W.D. Mo. Jan. 20, 2022).

Here, the ALJ's decision clearly establishes his determination that Plaintiff is not limited in sitting, walking, standing, pushing, and pulling. By finding Plaintiff capable of light work with certain exceptions outlined above, the ALJ's RFC was not so vague or general so as to prevent the undersigned from determining whether Plaintiff's RFC is supported by substantial evidence. In fact, the ALJ provided a detailed discussion of Plaintiff's reported difficulties, limitations, and complaints, comparing them with the medical evidence of record. R. at 15-21. The ALJ did not err in formulating the RFC by failing to list out every single function.

**B.      The Physical Limitations in the ALJ's RFC**

The ALJ must base the RFC on "all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004), and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Because the RFC is a medical question, "an ALJ's assessment of it must be supported

by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted).

Plaintiff argues the ALJ's RFC "as to [his] physical functional limitations is unsupported by and inconsistent with the substantial evidence." Doc. 13 at 13. He contends the ALJ improperly relied on certain opinions and rejected other medical opinions without proper basis. *Id*. at 13-14, 16-18. Plaintiff also maintains the ALJ's RFC is flawed because he failed to "acknowledge . . . Defendant's own Ruling specifically addressing chronic fatigue syndrome." *Id*. at 15-16.

**(1) Medical Opinions**

**(a) Applicable Standard**

Under the applicable regulations, no single medical opinion or medical source is given any deference or specific evidentiary weight, including controlling weight. 20 C.F.R. § 404.1520c(a).[4] The ALJ must evaluate the persuasiveness of medical opinions and prior administrative findings with consideration of five factors: supportability,[5] consistency,[6] relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, extent of treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion…." *Id.* § 404.1520c(a), (c)(1)-(5). When an ALJ evaluates the persuasiveness of medical opinions, supportability and consistency are the "most important factors." *Id*. § 404.1520c(a).

---

[4] Plaintiff filed his applications after March 27, 2017. R. at 11, 197-98. Accordingly, 20 C.F.R. § 404.1520c applies.

[5] Supportability is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[6] Consistency is defined as "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

6

In his decision, the ALJ must "articulate . . . how persuasive [he] find[s] all of the medical opinions . . . ." *Id*. § 404.1520c(b). Three "articulation requirements" must be met. *Id*. § 404.1520c(b)(1)-(3). First, "when a medical source provides multiple medical opinion(s)…[the ALJ] will articulate how [he] considered the medical opinions…from that medical source together in a single analysis using the factors" identified above. *Id*. § 404.1520c(b)(1). Second, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id*. § 404.1520c(b)(2). Third, when the ALJ finds "two or more medical opinions… about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same, [the ALJ] will articulate how [he] considered the other most persuasive factors" set forth above. *Id*. § 404.1520c(b)(3).

### (b) Medical Opinions Considered by the ALJ

#### i. Thomas Doering, PA-C

After reviewing medical records and examining Plaintiff in November 2018, consultative examiner Thomas Doering, PA-C, opined Plaintiff was able to stand for six hours, walk for four hours, sit for eight hours, occasionally lift forty-five to fifty pounds during an eight-hour workday, and did not require an assistive device for ambulation. R. at 394-400. He assessed Plaintiff with "Chronic Fatigue Syndrome" and found his joints exhibited normal range of motion. R. at 397, 399-400. Particularly, PA Doering rated Plaintiff's gait and tandem gait as four out of five, and his backward gait as three out of five with some unsteadiness. R. at 396. He found normal range of motion in Plaintiff's shoulders, elbows, wrists, knees, hips, ankles, and cervical and lumbar spine. R. at 399-400. PA Doering noted normal grip strength and normal upper and lower extremity strength. *Id*. He also found no deficits in fine motor skills and observed no tender points or pain associated with a straight leg test. R. at 396. He observed Plaintiff was able to perform

fine finger movements, had a normal heel to shin test, was able to rise from a sitting position without assistance, and had only mild difficulty standing on tiptoes/heels and squatting. R. at 397.

The ALJ found PA Doering's opinion to be persuasive as it was "generally supported by the reported examination findings." R. at 19. Further, he stated the opinion was "generally consistent with the overall record" citing other treatment provider's findings of "normal musculoskeletal range of motion, strength, and gait, as well as normal sensation and motor function." Id. In particular, he relied on medical treatment records related to Plaintiff's overall physical health. R. at 19 (citing 1F/11 (R. at 308), 1F/18 (R. at 315), and 1F/26 (R. at 323)). Therein, Jama Bogart, DNP observed Plaintiff had normal "range of motion," and "strength"; had no "tenderness," "swelling," or "deformity"; and had a "[n]ormal gait" during examinations conducted on February 9, 2018, December 12, 2017, and July 19, 2017. R. 308, 315, 323. The ALJ also identified a doctor visit with Dr. John Fox in June 2020 where Plaintiff reported "good musculoskeletal range of motion and no musculoskeletal swelling or pain, as well as normal heart rate and regular rhythm and normal pulmonary effort and breath sounds." R. at 19-20 (citing 14F/23 (R. at 489)).

Plaintiff argues the ALJ improperly relied upon PA Doering's opinion because it was rendered "on 11/3/18 – just shy of 3 years prior to the ALJ's decision and without benefit of review of substantial evidence received after that time, including the opinions of Dr. McGraw and Dr. Falkove – both of whom have superior qualifications as licensed physicians." Doc. 13 at 13. Further, he claims PA Doering "did not have [the] benefit of review of the opinions of FNP-C Eador, who actually treated Plaintiff for a period of time." Id. at 13-14. The Acting Commissioner maintains the ALJ "discussed the two most important factors of supportability and consistency"

but was "not required to discuss 'superior qualifications' of any providers." Doc. 18 at 17.[7] As such, the Acting Commissioner contends the ALJ "properly discussed each opinion and reached a finding that was supported by substantial evidence." *Id*. at 7.

The ALJ's decision to find PA Doering's opinion "persuasive" was supported by substantial evidence in the record. Although PA Doering's opinion was rendered before certain medical records and opinions were added to the record, the additional records and opinions do not reflect a significant change in Plaintiff's condition since PA Doering rendered his opinion. *See* R. at 430-31, 435, 440, 474, 478 (Plaintiff complained of, *inter alia*, fatigue, headaches, joint pain and lack of energy); 431, 441, 475-76 (Plaintiff presented as alert, oriented, not in acute distress, regular heart rate and rhythm, and no extremity edema); 483 (comprehensive health assessment noted Plaintiff denied problems with memory; use of a walker, cane, crutch, wheelchair, or an assistive device; or emotional or mental health problems). And despite the records and opinion evidence being unavailable when PA Doering issued his opinion, the ALJ nonetheless considered those additional records and opinions when formulating the RFC.

On review, this Court does not reweigh the evidence before the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Even if the reviewing court would weigh the evidence differently, the court must nonetheless affirm the denial of benefits if there is substantial evidence to support the ALJ's finding. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The interpretation of physicians' findings is a factual matter left to the ALJ's authority. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). It is the ALJ's function to resolve any conflicts among the opinions of various treating and examining physicians. *Pearsall,* 274 F.3d at 1219.

---

[7] The Acting Commissioner cites *Salsbury v. Berryhill*, No. 16-06169-CV-SJ-NKL, 2017 WL 4392051, at *9 (W.D. Mo. Oct. 3, 2017), in which the Court stated, "[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. Agency regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." Doc. 18 at 17.

9

When the ALJ evaluated PA Doering's opinion, he found it was "generally supported by the reported examination findings" and consistent with other treatment providers' findings of "normal musculoskeletal range of motion, strength, and gait, as well as normal sensation and motor function." *Id*. Because PA Doering's opinion was consistent with and supported by the objective medical evidence outlined above, the ALJ properly determined the opinion was persuasive. Accordingly, the Court finds the ALJ did not err by finding PA Doering's opinion was persuasive as his opinion was supported by substantial medical evidence in the record.

### ii. Dennis McGraw, D.O.

In November 2018,[8] Dr. Dennis McGraw, a state agency consultant, based solely on his review of Plaintiff's medical records at the time, determined Plaintiff can occasionally lift and/or carry twenty pounds and ten pounds frequently; stand and/or walk for a total of two hours; sit for a total of six hours in an eight hour workday; push and/or pull as shown for lift and/or carry; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance and stoop; frequently kneel, crouch, and crawl; should avoid concentrated exposure to noise, vibration, and respiratory irritants; and should avoid moderate exposure to hazards such as machinery and heights. R. at 152-55. The ALJ found Dr. McGraw's opinion was not persuasive because the "excessive limitations" were "not generally consistent with the overall record." R. at 19.

In support of the weight he afforded Dr. McGraw's opinion, the ALJ relied on PA Doering's finding that Plaintiff had only slight ataxia and unsteadiness, no focal weakness or sensory deficit, was able to stand on tiptoes and heels and squat and arise with only mild difficulty,

---

[8] Curiously, Plaintiff does not raise issue with the timing of Dr. McGraw's opinion, which was rendered two weeks *after* PA Doering's opinion. *See* R. at 145-57, 392-400. The Court would note that most of the records Plaintiff argues PA Doering was unable to review due to the timing of his opinion would have been unavailable to Dr. McGraw as well.

could ambulate without an assistive device, and had full motor strength with all extremities. *Id*. (citing 4F/5-6 (R. at 396-97)). The ALJ also observed Dr. McGraw's opinion was inconsistent with records from Plaintiff's treating care providers. *Id*. The ALJ acknowledged that on one occasion a provider observed Plaintiff had "decreased strength to the bilateral upper and lower extremities and abnormal gait." *Id*. (*see* R. at 436-37). But the ALJ also referred to other records which contained normal observations. For example, he noted that in March 2018, Plaintiff "ambulated without assistance" and had "generally unremarkable examination findings." *Id*. (citing 2F/6 (R. at 335)). And he cited to medical records from June 2020 indicating Plaintiff had "normal musculoskeletal range of motion and no musculoskeletal swelling or pain." *Id*. (citing 14F/23 (R. at 489)).

Plaintiff argues the ALJ's "rationale for rejecting Dr. McGraw's opinion[] is not supported by substantial evidence." Doc. 13 at 14. Specifically, he contends it was improper to find Dr. McGraw's opinion inconsistent with PA Doering's opinion because that opinion did not address Plaintiff's ability to stand or walk for extended periods of time and did not discuss any fatigue associated with CFS. *Id*. Further, he states PA Doering's findings do not address the fatigue associated with CFS. *Id*.

"It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians." *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (citation omitted). Under the regulations applicable in this case, an ALJ cannot defer or give any specific evidentiary weight, including controlling weight, to any medical opinion including opinions from treating physicians. 20 C.F.R. § 404.1520c(a). An ALJ may properly reject a medical expert's opinion if it is inconsistent with the medical record as a whole, or where a physician renders inconsistent opinions that undermine the credibility of such opinions. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); *Pearsall*, 274 F.3d at 1218-19.

11
Case 3:21-cv-05024-WBG   Document 25   Filed 09/13/22   Page 11 of 16

Despite Plaintiff's claims to the contrary, the ALJ did not err by finding Dr. McGraw's opinion unpersuasive. The ALJ noted Dr. McGraw's "excessive limitations" were "not generally consistent with the overall record." R. at 19. He summarized the doctor's findings as to Plaintiff's physical limitations and explained how these findings were not supported by the evidence in the record. As discussed above, the ALJ also cited specific evidence in the record that was inconsistent with Dr. McGraw's opinion. *Id*. While the Court may have weighed some evidence differently if it were the finder of fact, the ALJ's decision was not outside of the available "zone of choice," and therefore, was not done in error. *See Buckner*, at 556.

### iii. Michael D. Falkove, M.D.

In February 2020, Dr. Michael Falkove reviewed medical records and was asked by Defendant to prepare interrogatories. R. at 456-58. Dr. Falkove opined Plaintiff did not require the use of an assistive device to ambulate; could occasionally carry up to ten pounds; would never be able to climb stairs and ramps, ladders, or scaffolds; could never tolerate exposure to unprotected heights, moving mechanical parts, or operating a motor vehicle; and Plaintiff could shop, travel without a companion, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace while using a single hand rail, prepare simple meals and feed himself, care for his personal hygiene, and sort, handle, or use paper/files. R. at 459-64. Dr. Falkove suggested Plaintiff would have frequent weekly absences. R. at 458. He opined the above limitations were first present in September 2018 . R. at 464.

The ALJ found Dr. Falkove's opinion was unpersuasive. R. at 20. First, the ALJ criticized Dr. Falkove's reference that there had been no consultative examinations, which was incorrect. *Id*.; *see* R. at 456. Second, he concluded Dr. Falkove's opinion about Plaintiff being frequently absent was "vague, speculative, and not supported by the frequency of the claimant's treatment or consistent and significant exam findings." R. at 20. Third, the ALJ found his opinion failed to

12

adequately explain "the specific evidence on which he relied" and was generally inconsistent with Plaintiff's treatment records. *Id*. The ALJ acknowledged Dr. Falkove's opinion was "fairly consistent" with the opinion of Sherri Eador, FNP-C, who treated Plaintiff. R. at 20. The ALJ, however, found FNP Eador's opinion (discussed below) was "unsupported by the evidence." R. at 20. He also emphasized Dr. Falkove's opinion, which was based on responses to interrogatories, was inconsistent with the opinion from an examining medical professional who found Plaintiff was "considerably more capable." *Id*. Based on the foregoing, the Court finds the ALJ properly explained how he considered the supportability and consistency factors for Dr. Falkove's opinion and articulated why he determined Dr. Falkove's opinion was unpersuasive. This Court will not substitute its own judgment for that of the ALJ in evaluating the opinion of Dr. Falkove.

### iv. Sherri Eador, FNP-C

In November 2018, Plaintiff had his first appointment with FNP Eador. R. at 428-32; Doc. 13 at 6. FNP Eador saw Plaintiff again in April 2019, at which time she opined Plaintiff "would highly benefit from disability" and "does not appear to be able to tolerate working at this time." R. at 438. On May 4, 2019, FNP Eador prepared a Medical Source Statement (Physical) wherein she opined Plaintiff was unable to work; could stand for fifteen minutes at one time and a total of thirty minutes during a workday; and can sit for sixty minutes at one time and a total of sixty minutes during a workday. R. at 424. She also concluded Plaintiff could frequently lift five pounds; seldom bend, stoop, and balance; occasionally perform fine hand manipulations; frequently perform gross hand manipulations; frequently reach with both arms; frequently tolerate noise exposure; and seldom work around dangerous equipment; seldom operate a motor vehicle; and seldom tolerate heat and cold as well as exposure to dust, smoke, or fumes. *Id*. at 424-25. FNP Eador stated Plaintiff could work no hours per day and would be absent, on average, thirty days per month (i.e., every day). R. at 424-25. In a November 2019 addendum, FNP Eador stated

Plaintiff was a fall risk due to dizziness and "should avoid driving or being around machinery." R. at 477.

The ALJ found FNP Eador's opinion unpersuasive as it was "conclusory, not supported by an adequate explanation of the evidence relied upon in forming the opinion, and is unsupported by exam findings within this provider's notes." R. at 20 (citing 9F (R. at 427-38), 10F (R. at 439-43), 14F (R. at 467-506)). In support, the ALJ identified, among other things, PA Doering's findings including full motor strength of all extremities; Plaintiff's lack of atrophy and his appropriate bulk and tone; only slight ataxia and unsteady gait; and Plaintiff's ability to sit, stand, and squat with mild difficulty. R. at 20-21 (citing 4F/5-6 (R. at 396-97)). He also relied on Dr. Fox's findings including "normal musculoskeletal range of motion and no musculoskeletal swelling or pain." R. at 21 (citing 14F/23 (R. at 489)).

For the foregoing reasons and the same reasons set forth above in the Court's decision of the ALJ's consideration of medical source opinions, the Court finds the ALJ properly discussed the consistency (or lack thereof) with the record as a whole and appropriately articulated his determination of FNP Eador's opinion. Further, the records from FNP Eador indicating Plaintiff "does not appear able to tolerate working at this time" and "would highly benefit from disability" constitute opinions on issues reserved for the Commissioner. As such, the ALJ was within his power to find such an opinion unpersuasive given that it infringes on issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3). Such a declaration is "inherently neither valuable nor persuasive" and the ALJ did not have to analyze it in his decision. *Id.*

### v. Kim Dempsey, Psy.D.

In November 2018, Dr. Kim Dempsey, a state agency consultant who reviewed Plaintiff's medical records, opined that no mental medically determinable impairments were established. R. at 149-50. The ALJ determined her opinion persuasive as it was "supported by an explanation and

14
Case 3:21-cv-05024-WBG    Document 25    Filed 09/13/22    Page 14 of 16

reference[s] to the record" and was "consistent with the overall record, which does not evidence a mental health diagnosis." R. at 19.

Plaintiff contends "there is no explanation as to how the ALJ arrived at the conclusion Plaintiff could understand, remember, and carry out simple and some detailed instructions." Doc. 13 at 19. He also argues the ALJ should have "fulfilled his duty to develop the record fully and fairly and obtained some medical opinion as to Plaintiff's mental functional limitations." *Id*. at 18. In support, he refers to treatment records subsequent to Dr. Dempsey's opinion where Plaintiff was "suffering from moderate depression" and a note indicating deficits in short-term memory including memory loss. *Id*. (citing R. at 410, 432, 434, 489).

Despite Plaintiff's claims to the contrary, no further development of the record was required. Plaintiff's records included detailed information about his mental health presentation as well as sufficient information needed to determine any mental health limitations. *See, e.g.*, R. at 311 (Plaintiff's speech was clear and coherent and functional cognition was intact), 323 (Plaintiff was cooperative with appropriate mood and affect), 437 (Plaintiff was alert, oriented, and cooperative with normal speech and movement), 486 (same). Further, the ALJ properly considered Plaintiff's CFS when finding he could "understand, remember, and carry out simple and some detailed instructions that can be learned within 3 months." R. at 15. For these reasons, the Court finds the ALJ properly relied upon the administrative findings that Plaintiff did not suffer from a medical determinable mental health impairment, and the mental limitations in the ALJ's RFC are supported by substantial evidence in the record.

B.  **Consideration of SSR 14-1p**

Plaintiff contends the ALJ "did not acknowledge SSR 14-1p," which "address[es] chronic fatigue syndrome." Doc. 13 at 15. SSR 14-1p "provides guidance on how [the Social Security Administration] develop[s] evidence to establish that a person has a medically determinable

15
Case 3:21-cv-05024-WBG    Document 25    Filed 09/13/22    Page 15 of 16

impairment of chronic fatigue syndrome . . . . " Soc. Sec. Admin., Titles II and XVI: Evaluating Claims Involving Chronic Fatigue Syndrome (CFS), SSR 14-1p, 2014 WL 1371245 (Apr. 3, 2014). If an ALJ finds a claimant suffers from CFS, and it is a severe medical impairment, the ALJ "must make an assessment of the person's RFC" by considering the claimant's "impairment-related symptoms in deciding how such symptoms may affect functional capacities." *Id.* at 9.

In this matter, the ALJ determined Plaintiff's sole severe impairment is CFS. R. at 13-14, 16. He then considered, and discussed at length, Plaintiff's CFS symptoms and limitations related thereto to determine Plaintiff's RFC. R. at 15-21. As discussed *supra*, section III(A), the ALJ's RFC was based on the substantial evidence in the record. R. at 14-21. The Court finds the ALJ's evaluation of the evidence related to Plaintiff's CFS is not inconsistent with the guidelines in SSR 14-1p. At most, the ALJ's failure to expressly reference SSR 14-1p in his opinion is a mere deficiency in his opinion writing, which does not require remand. *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005). His failure to explicitly acknowledge SSR 14-1p had no practical effect on the outcome of this matter, and as such, the ALJ committed no error.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Acting Commissioner's decision is supported by substantial evidence on the record as a whole, and therefore, is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE:   September 13, 2022                  */s/ W. Brian Gaddy*
                                            W. BRIAN GADDY
                                            UNITED STATES MAGISTRATE JUDGE